UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BARBARA JONES,**

    **Plaintiff,**

v.                                                    Case No.  8:06-CV-1727-T-EAJ

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**
_____ /

## **FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United Sates Code, Section 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") under the Act.[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). If there is substantial evidence to support

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (Dkt. 19).

the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).[2]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff alleges that she became disabled on February 21, 2000 due to degenerative disc disease of the lumbar spine and irritable bowel syndrome ("IBS"). (T 16, 23, 367) Plaintiff filed an application for DIB on June 9, 2000.[3] (T 64, 90) Her application was denied initially on October 4, 2000, and after reconsideration on February 20, 2001. (T 44, 49) The ALJ held an administrative hearing on November 13, 2001. (T 37, 345) The ALJ denied benefits to Plaintiff in a decision dated March 15, 2002. (T 37-43, 345) Plaintiff filed a request for review on May 7, 2002, and the case was remanded for further consideration of new and material evidence. (T 54, 59-62) Supplemental hearings were held on June 7, 2004 and November 13, 2004. (T 345, 364) Plaintiff amended her

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981).

[3] A discrepancy exists in the record regarding the date Plaintiff applied for DIB. The original decision on Plaintiff's disability status lists February 21, 2000 as the date of filing. (T 37) The decision on rehearing lists May 23, 2000 as the date of filing. (T 15) Two documents from the transcript, a printout titled "Application for Disability Insurance Benefits" and a worksheet titled "Reconsideration of Disability Report," list the date of application for benefits as June 9, 2000 and June 2000, respectively. (T 64, 90) The court assumes that the hearing took place on June 9, 2000.

claim to cover only the closed period of February 21, 2000 to September 1, 2002. (T 367) The ALJ issued his decision on February 24, 2005 denying benefits. (T 12-24) The Appeals Council denied Plaintiff's request for review on July 31, 2006, allowing the ALJ's decision to stand. (T 4-6) Plaintiff filed a timely petition for judicial review of the Commissioner's denial after exhausting all administrative remedies (Dkt. 1). The Commissioner's decision is ripe for review under the Act.

At the time of the ALJ's decision, Plaintiff was thirty-eight years old and had some college education. (T 84) Her past work experience includes work as a restaurant manager and as an RV sales manager. (T 79, 350-351)

To determine whether or not Plaintiff was disabled, the ALJ performed a five-step evaluation. See 20 C.F.R. §§ 404.1520. First, the ALJ found that during the closed period of February 21, 2000 to September 1, 2002, Plaintiff had not engaged in substantial gainful activity. (T 16) Second, after examining the medical evidence, the ALJ determined that Plaintiff had impairments of degenerative disc disease of the lumbar spine and IBS. (T 19) Third, the ALJ found that the combination of Plaintiff's impairments did not medically meet or equal an impairment listed in the Listing of Impairments. (T 19) In the fourth step, the ALJ evaluated Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff could return to her past relevant work during the relevant period. (T 22-23) In light of this, the ALJ determined that Plaintiff was not disabled as defined by the Act. (T 23)

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

**II.**

Plaintiff argues that the Commissioner erred by improperly according the opinions of Plaintiff's treating, specialist physicians little weight while placing great weight on the opinion of

a reviewing, non-specialist physician when evaluating whether Plaintiff met Listing 5.06 (Dkt. 17 at 10).

Plaintiff argues that the opinions of her treating physicians Lucretia Fisher, M.D. ("Dr. Fisher"), Plaintiff's primary care physician, Tawfik Chami[4], M.D. ("Dr. Chami") and David Shepard, M.D. ("Dr. Shepard"), gastroenterology specialists, should be controlling in determining whether she meets the requirements for disability under 5.06(B) (Id.). Based upon the results of testing performed by Drs. Shepard and Chami, Dr. Fisher completed a questionnaire indicating that Plaintiff met the medical requirements of Social Security Listing of Impairments 5.06 by having chronic ulcerative or granulomatous colitis and a persistent or recurrent manifestation which was not attributable to other causes. (T 298-302) Dr. Chami also completed a questionnaire which agreed with Dr. Fisher and noted that Plaintiff had lost a significant amount of weight due to her condition. (T 293-297) Plaintiff argues that these questionnaires indicate she met the disability requirements of Listing 5.06(B) (Dkt. 17 at 12).

Plaintiff further contends that the ALJ erred by giving significant weight to the opinion of Waddy Baroody, M.D. ("Dr. Baroody") who testified that Plaintiff did not meet the requirements of listing 5.06 (Id. at 10). Plaintiff notes that Dr. Baroody's testimony should have been given less weight on two grounds: (1) he was a reviewing physician as opposed to an examining physician and (2) although Baroody practices some gastroenterology as part of his internal medicine practice, he is not a certified gastroenterologist and as such his opinion should carry less weight that of Drs.

---

[4]The transcript does not contain any medical records from Dr. Chami other than his 5.06 questionnaire. (T 293-297) The record does indicate, however, that Dr. Chami is an associate of Dr. Shepard at the Gastroenterology Division of the Florida Medical Clinic in Zephyrillis, Florida. (T 267) Plaintiff states that she was seen by Dr. Chami in addition to Dr. Shephard beginning on May 5, 2001 and continuing through June 15, 2002 (Dkt. 17 at 10-11).

Chami and Shepard who are both gastroenterologist specialists (Id. at 10, 12).

When determining whether an individual is disabled, the testimony of a treating physician must be given considerable weight unless good cause is shown to the contrary. Crawford v. Comm'r of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004). An ALJ may commit error by substituting his own uniformed medical opinion for that of a claimant's treating physician absent good cause. Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986). Additionally, the ALJ commits error if he fails to articulate the reasons for determining good cause for affording the treating physician's opinion less weight. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). Good cause for discrediting a treating physician's opinion on disability exists where the doctor's opinion is not supported by the evidence, is inconsistent with the physician's own medical records, or merely is conclusory. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In reaching a decision, the ALJ considered all the medical evidence regarding Plaintiff's IBS. The ALJ noted that Plaintiff's history of IBS began in April 2001 when she went to East Pasco Medical Center complaining of lower right quadrant pain and diarrhea. (T 17, 230) A computer tomography scan of the abdomen was performed which revealed thickening of the bowel on the right side. Plaintiff underwent gastrointestinal evaluation with colonoscopy which revealed a polyp and mild ileitis. (T 17, 230, 278)  The polyp was removed and biopsies were found to be benign. (T 17, 230, 240)

Plaintiff had a post-hospital follow-up with Dr. Shepard in May 2001. (T 17, 268) Dr. Shepard diagnosed Plaintiff with mild diverticulitis, resolving, cecal adenoma, family history of colon cancer, gastroesophageal reflux disease, and IBS. (Id.) Plaintiff returned to Dr. Shepard in November 2001 complaining of nausea, vomiting, and epigastric abdominal pain. (T 18, 267) Plaintiff underwent treatment and testing with Dr. Shepard which included

5

esophagogastroduodenoscopy ("EGD"), abdominal sonogram, HIDA scan, biopsies to test for the presence of H. Pylori and dysplastic cells and a Kinevac study of the galbladder. (T 18, 286, 289) The ALJ indicated that the results of those tests had been negative and that Dr. Shepard had diagnosed Plaintiff with chronic upper abdominal pain.[5]  (T 18, 284) Dr. Shepard ruled out inflammatory bowel disease based on the results of Plaintiff's colonoscopy and noted some improvement with Plaintiff's diarrhea with the use of medication. (T 284)  Dr. Shepard recommended a gastric emptying study to evaluate Plaintiff for gastroparesis, but as the ALJ noted, the results of this test were unavailable. (T 21, 284)

The ALJ discussed Plaintiff's treatment history with Dr. Fisher, noting that at a follow-up visit in February 2002 Plaintiff stated she had been diagnosed with ideopathic gastroparesis and prescribed Reglan. (T 18, 317) At this visit, Plaintiff stated that she had frequent diarrhea with this medication. (Id.) Dr. Fisher's examination of Plaintiff revealed a soft, non-tender, nondistended abdomen. (Id.) The ALJ noted that Plaintiff next followed up with Dr. Fisher in May 2002. (T 18) Plaintiff still complained of occasional nausea, vomiting, and diarrhea at this visit and noted continued weight loss. (T 18, 314) Dr. Fisher's examination of Plaintiff revealed a soft, non-tender, nondistended abdomen. (Id.) Dr. Fisher diagnosed Plaintiff with persistent abdominal pain with weight loss and diarrhea and prescribed medication. (Id.)

The ALJ addressed Drs. Fisher and Chami's questionnaires, from May and June 2002 respectively, both of which indicated that Plaintiff had chronic ulcerative or granulumatous colitis (demonstrated by endoscopy, barium enema, biopsy, or operative findings) with persistent or

---

[5] Plaintiff indicated that Dr. Shepard advised her the testing had shown a severe case of Crohn's Disease. (T 280) Dr. Shepard's records show no evidence of such a diagnosis, and in fact, specifically state that inflammatory bowel disease, a group of conditions which includes Crohn's Disease, was ruled out through colonoscopy. (T 284)

recurrent systematic manifestations not attributable to other causes. (T 18-19, 293-297, 298-302) Dr. Chami indicated that Plaintiff's persistent systematic manifestation was arthritis of the back and right hip. (T 19, 293) Dr. Fisher commented that Plaintiff suffered from IBS with ideopathic gastroparesis and that Plaintiff exhibited intermittent constipation, intractable nausea and vomiting, and frequent watery diarrhea. (T 19, 302) Dr. Chami concluded that Plaintiff suffered from IBS and gastrointestinal dysmotility which resulted in frequent diarrhea, vomiting, and stomach discomfort. (T 19, 297) Both physicians indicated that Plaintiff weighed 121 pounds and was 64-66 inches tall. (T 19, 293, 299)

The ALJ also discussed the testimony of reviewing physician Dr. Baroody. (T 19) Dr. Baroody had reviewed Plaintiff's medical evidence on record and testified as an impartial medical expert at an administrative hearing. (T 19, 364-387) Asked whether Plaintiff had chronic ulcerative or granulomatous colitis demonstrated by endoscopy, barium enema, biopsy, or operative findings, Dr. Baroody testified that the testing performed showed no evidence of such a finding. (T 19, 375-376) Dr. Baroody stated that he felt Plaintiff had no debilitating gastrointestinal condition and that her problems could be treated with medication and diet. (T 19, 377)

The ALJ found that the opinions of Drs. Fisher and Chami as to Plaintiff meeting the requirements of Listing 5.06 were not supported by medical evidence. (T 21-22) The ALJ noted that the available records showed Plaintiff to have a negative gastrointestinal work-up. (T 21-22, 284, 286, 289) The ALJ also specified that at the June 7, 2004 administrative hearing with Dr. Baroody, Plaintiff was advised to return to Drs. Fisher and Chami to obtain more information as to how the objective evidence supported their determinations, but that no further information was received. (T 22, 384) Because the opinions of Drs. Fisher and Chami were not supported by the medical evidence, the ALJ had good cause for discrediting their opinions.

The ALJ additionally noted that even if he accepted the opinions of Drs. Fisher and Chami as to Plaintiff having ulcerative or granulomatous colitis, Plaintiff still did not meet the rest of the requirements under Listing 5.06. (T 22) Listing 5.06 provides as follows:

> *5.06 Chronic ulcerative or granulomatous colitis (demonstrated by endoscopy, barium enema, biopsy, or operative findings)*. With:
> A. Recurrent bloody stools documented on repeated examinations and anemia manifested by hematocrit of 30 percent or less on repeated examinations; or
> B. Persistent or recurrent systematic manifestations, such as arthritis, iritis, fever, or liver dysfunction, not attributable to other causes; or
> C. Intermittent obstruction due to intractable abscess, fistula formation, or stenosis; or
> D. Recurrence of findings A, B, or C above after total colonectomy; or
> E. Weight loss as described under 5.08.
> 20 C.F.R. 404, subpt. P, app. 1, § 5.06.

The ALJ noted that both Drs. Fisher and Chami's questionnaires listed Plaintiff as qualifying via section B. (T 18-19, 293, 298) Dr. Fisher did not specifically identify a persistent recurrent manifestation, however Dr. Chami listed arthritis of the back and right hip. (T 19, 293, 298-302) The ALJ acknowledged that the medical evidence showed that Plaintiff suffered from arthritis, but noted that Listing 5.06 requires the manifestation under section B to not be attributable to other causes. (T 22) The evidence showed that this Plaintiff's arthritis was first treated in January 2000. (T 22, 110-113, 153-155) As the onset of Plaintiff's IBS was April 2001, the ALJ noted that Plaintiff's arthritis was clearly not a result of her abdominal problems. (T 22)

As Plaintiff's physicians also noted significant weight loss, the ALJ also addressed Plaintiff's possibility of qualifying for Listing 5.06 under section E. (T 22) Both Drs. Fisher and Chami indicated that Plaintiff weighed 121 pounds and was 64-66 inches tall.[6] (T 293, 299) Listing 5.08 provided a listing of heights and weights for which an applicant would qualify for disability due to

---

[6] Dr. Fisher's questionnaire apparently indicates that Plaintiff's weight did not meet the values specified on the weight tables. (T 299-300)

8

a gastrointestinal disorder. For Plaintiff, an adult female between 64 and 66 inches in height, the weight range is designated as 91-104 lbs. 20 C.F.R. 404, subpt. P, app. 1, § 5.08. The ALJ noted that the Plaintiff clearly did not meet the requirements of this section. (T 22)

Plaintiff bore the burden of providing evidence showing that her condition met or medically equaled that of Listing 5.06. 20 C.F.R. §§ 404.1512(a), 1520(d). The standard of proof for showing that a claimant meets or equals a presumptive disability under the listings requires specific medical findings which if met would prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Sullivan v. Zebley, 493 U.S. 521, 532 (U.S. 1990). As discussed previously, Plaintiff's medical records do not meet the requirements of Listing 5.06. Substantial evidence supports the ALJ's finding that Plaintiff's IBS did not meet or equal any listed impairment.

Regarding Plaintiff's argument regarding the weight to afford Dr. Baroody's opinion, a physician's status as treating or non-treating is but one factor to consider and opinions of reviewing sources may override opinions from treating sources if the reviewing source's opinion is supported by evidence on the record. 20 C.F.R. § 404.1527(d), (f); 56 F.R. § 36932. Dr. Baroody's testimony that Plaintiff did not meet the Listing 5.06 requirements was supported by Plaintiff's medical records showing essentially normal EGD and colonoscopy. (T 284, 286, 289, 375-376) Thus, the ALJ properly relied on Dr. Baroody's opinion in reaching his decision. In reference to Dr. Baroody's qualifications in gastroenterology, Plaintiff was afforded an opportunity to object to his expert testimony at the administrative hearing and declined to do so, thus accepting Dr. Baroody as a medical expert.[7] (T 368)

---

[7] Dr. Baroody testified that he practices gastroenterology in his internal medicine practice. (T 368) In addition, Dr. Baroody stated he had a Gastroenterology Fellowship at the University of

### III.

The ALJ's decision is supported by substantial evidence and the proper legal principles. Accordingly, the decision of the Commissioner is therefore **AFFIRMED**.

Accordingly and upon consideration, it is **ORDERED** that:

(1)  the decision of the Commissioner is **AFFIRMED** and the case **DISMISSED**, each party to bear its own costs and expenses; and

(2)  the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. § 405(g).

**DONE AND ORDERED** in Tampa, Florida this 15th day of January, 2008.

*[signature]*
ELIZABETH A JENKINS
United States Magistrate Judge

---

Pennsylvania Hospital and practiced in the GI section of an Army hospital for two years.  (Id.)